FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 25, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AUSTIN M.,[1] | No. 1:20-cv-03185-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| | ECF Nos. 16, 17 |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 16, 17.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 16, and denies Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.920(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 5, 2018, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of November 24, 2017.  Tr. 15, 66, 67, 201-13.  The applications were denied initially and on reconsideration.  Tr. 118-21, 125-38.  Plaintiff appeared

ORDER - 6

before an administrative law judge (ALJ) on March 20, 2020.  Tr. 39-65.  On April 9, 2020, the ALJ denied Plaintiff's claim.  Tr. 12-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through June 30, 2019, has not engaged in substantial gainful activity since November 24, 2017, the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: congestive heart failure, obesity, and right eye retinal detachment.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [H]e can lift and or carry 20 pounds occasionally and 10 pounds frequently. He can stand and or walk about 4 hours in an 8-hour workday and can sit about 6 hours.  He can occasionally climb ramps and stairs but never ladders, ropes or scaffolds.  He can frequently balance, stoop, kneel, crouch, and crawl.  He can have only occasional exposure to extreme cold, extreme heat, hazardous machinery, unprotected heights, and irritants such as fumes, odors, dusts, gases, and poorly ventilated areas.  He is limited to performing tasks that require no more than occasional need for depth perception.

Tr. 18-19.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 23.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there

ORDER - 7

were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, cashier II; assembler, production; and storage facility rental unit clerk. Tr. 24. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of November 24, 2017 through the date of the decision. *Id.*

On September 3, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ conducted a proper step-three analysis.

ECF No. 16 at 2.

ORDER - 8

# DISCUSSION

## A. Plaintiff's Symptom Claims

Plaintiff contends the ALJ erred by not properly assessing Plaintiff's testimony and failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 16 at 4-11. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.

*Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 10

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Tr. 20.

Plaintiff contends the ALJ's discussion consists of a summary conclusion that Plaintiff's limitations do not preclude all work activity, along with a bulleted list of some of the evidence of record, which is not legally sufficient as it does not identify what symptom complaint is being discounted and the basis for discounting the complaint.  ECF No. 16 at 5-6.  Defendant contends the ALJ gave two valid reasons supported by substantial evidence for discounting Plaintiff's testimony, because Plaintiff's testimony was inconsistent with treatment records and records show improvement.  ECF No. 17 at 4-5.

*1. Inconsistent with Medical Evidence*

The ALJ found Plaintiff's symptom claims were inconsistent with the medical evidence.  Tr. 20.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant factor, along

with the medical source's information about the claimant's pain or other

symptoms, in determining the severity of a claimant's symptoms and their

disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

416.929(c)(2).

The ALJ found that the medical evidence was not consistent with Plaintiff's

symptom testimony. Tr. 20. The ALJ provides a summary of treatment records

that, as Plaintiff points out, includes records that tend to support Plaintiff's

allegations, such as Plaintiff's consistent reports to providers "that he tires more

quickly after doing activities," that he "reported he noticed becoming more tired

recently after doing activities," that he had occasional brief "sharp chest

discomfort," could walk only about two blocks, had mild dyspnea with exertion,

and lightheadedness upon standing from crouched position. *See* Tr. 20-21; ECF

No. 16 at 6.

However, the ALJ also presents evidence that suggests Plaintiff was doing

progressively better after early 2018, without analysis or discussion of relevant

evidence, such as echocardiograms or cardiology findings related to his

impairments. Tr. 20-21. An ALJ must consider all of the relevant evidence in the

record and may not point to only those portions of the records that bolster his

findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001)

(holding that an ALJ cannot selectively rely on some entries in plaintiff's records

ORDER - 12

while ignoring others).  Here, for example, the ALJ notes that at an April 2018 appointment Plaintiff reported he was "overall in usual state of health" and that Dr. Kim "assessed his heart condition as stable."  Tr. 20 (citing Tr. 469-73).  Review of the full treatment note, however, reveals Dr. Kim is a cardiologist, he acknowledged that this was his first visit with Plaintiff, and he had not yet seen an echocardiogram or Plaintiff's childhood cardiology records, and he also determined that Plaintiff should wear "a LifeVest [defibrillator] for primary prevention of sudden cardiac death, until we are able to optimize his medical management and reassess his [ejection fraction]."  Tr. 469, 470.  Dr. Kim's assessment included stable dilated cardiomyopathy, chronic combined systolic and diastolic heart failure, and "[o]ther congenital malformation of the heart."  Tr. 472. He also noted that Plaintiff's report of tiring quickly after activities could indicate progressive heart failure.  Tr. 469.  He determined Plaintiff was "currently ACC/AHA Stage C Class II-III heart failure,"[3] and he ordered an echocardiogram to "evaluate his overall cardiac function."  Tr. 470.

The ALJ briefly discusses relevant objective medical evidence in his discussion of medical evidence, Tr. 20-21, noting that Plaintiff was hospitalized

_____

[3] The American Heart Association (AHA) webpage indicates that doctors usually classify patients according to the severity of their symptoms, and the most

ORDER - 13

with congestive heart failure in December 2017, and cardiac catherization in January 2018 showed non-ischemic cardiomyopathy with an estimated ejection fraction of 20 percent.  Tr. 20.  The ALJ then summarizes records that tend to show Plaintiff was doing better.  Tr. 20-21.  The ALJ notes, for example, that while he testified to chronic fatigue, "subsequent records show he has done fairly well since his initial [2017] hospitalization" and "the record consistently indicates no new or significant complaints."  Tr. 20.  The ALJ notes he had some "unremarkable chest x-rays, EKG, and normal lab tests," and Defendant also notes many "unremarkable" cardiovascular findings, ECF No. 17 at 5, but as Plaintiff points out, the ALJ does not discuss the relevant findings on echocardiogram, which is the test that measures congestive heart failure.  ECF No. 18 at 3-4.

---

commonly used classification system is the New York Heart Association (NYHA) functional classification, which places patients in one of four categories based on how much they are limited during physical activity.  Class II is "slight limitation of physical activity.  Comfortable at rest.  Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath)"; and Class III is "marked limitation of physical activity.  Comfortable at rest.  Less than ordinary activity causes fatigue, palpitation, and dyspnea."  *See* https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure, (last visited March 17, 2022).

ORDER - 14

1  Echocardiograms in 2018 and 2019 show persistent low ejection fraction of "about

2  24 [percent]" in April 2018 and 20-25 percent in May 2019; the imaging also

3  showed mild to moderate left ventricular enlargement, severely impaired left

4  ventricular systolic function, LVEF (left ventricular ejection fraction) 20-25

5  percent, grade two moderate diastolic dysfunction, and severe global hypokinesis.

6  Tr. 490, 832.  The ALJ was aware of the echocardiograms, as earlier in the

7  decision he noted these ejection fractions levels "could met the listing requirement

8  of 4.02A1," but he did not discuss these in his summary/discussion of medical

9  evidence.  *See* Tr. 18.  Objective medical evidence shows Plaintiff's cardiac

10 function did not improve during the period at issue, and his reports of persistent

11 fatigue are consistent with his testimony and supported by the evidence of record.

12     The ALJ summarized some of the medical evidence here but failed to

13 identify what in Plaintiff's symptom testimony was inconsistent with the evidence.

14 Tr. 20-21.  Further, as Plaintiff points out, the ALJ repeatedly cites records that

15 support Plaintiff's symptom complaints without explanation or analysis, including

16 reports of chronic and increasing fatigue with activities, including his "report[s] he

17 gets very occasional brief 2-3 seconds of sharp chest discomfort every so often,"

18 dyspnea with overexertion, lightheadedness, and ability to walk no more than a

19 few blocks without having to stop and rest.  Tr. 20-21.  The ALJ's reasoning is

20 unclear because much of the evidence identified by the ALJ could reasonably

support Plaintiff's symptom allegations. *Id.* The ALJ's summary of medical

evidence and conclusory statements fail to meet the burden of "setting out a

detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871

F.3d 644, 675 (9th Cir. 2017) (internal citations omitted). The ALJ's conclusion

that Plaintiff's symptom testimony is not consistent with medical evidence is not

supported by substantial evidence.

### 2. Improvement

The ALJ discounted Plaintiff's symptom claims because he improved with

treatment. Tr. 20-21. The effectiveness of treatment is a relevant factor in

determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3),

416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

Cir. 2006) (recognizing that conditions effectively controlled with medication are

not disabling for purposes of determining eligibility for benefits) (internal citations

omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (A

favorable response to treatment can undermine a claimant's complaints of

debilitating pain or other severe limitations.).

As discussed *supra*, objective findings do not support improvement.

However, the ALJ notes findings upon exam that suggest otherwise including that

Plaintiff had "regular heart rate and rhythm on exam in April 2018," that the record

ORDER - 16

"does not indicate new or significant complaints," he was in his "usual state of health," and that the cardiovascular findings were normal. Tr. 20-21. While the ALJ notes Plaintiff's subjective report he was "doing well overall" in July 2018, the ALJ does not discuss evidence of continued severe cardiac impairments such as records from November 2018, for example, which show Plaintiff continued "using a LifeVest for primary prevention of sudden cardiac death." *See, e.g.*, Tr. 1032.

The ALJ also cites primary care provider Dr. Sumners's comment in August 2019, at an unrelated primary care visit, that Plaintiff "was doing well from a cardiac standpoint." Tr. 21 (citing Tr. 884). The ALJ does not discuss relevant cardiology records from the following month, however, where his specialist indicated an implanted cardiac defibrillator was necessary based on findings from repeat echocardiogram in May 2019, which still showed no improved ejection fraction; and because "he continued to be symptomatic with fatigue, lightheadedness, and [shortness of breath/dyspnea] with activities. He is not very active due to his symptoms and reported he was only able to walk 2-3 blocks slowly only or able to do house chores [sic]. He denied orthopnea, PND, palpitation or leg edema." Tr. 1010. Notably, the ALJ repeatedly cites to records showing Plaintiff denied orthopnea, palpitation, edema, and other symptoms to show improvement, but here his cardiologist indicates he has failed to improve, and additional treatment is indicated despite lack of such symptoms. *See* Tr. 1011-

ORDER - 17

12.  As Plaintiff points out, the implanted defibrillator also revealed a new problem; records show it activated inappropriately in November 2019, administering a shock to Plaintiff, and interpretive readings from the device showed paroxysmal atrial fibrillation.  ECF No. 16 at 9; *see* Tr. 1001-02.

While the ALJ notes "subsequent records continue to show he was doing well" alongside with an ARNP's finding he was "NYHA Class II, slight limitation" in October 2019, the ARNP does not use the term slight limitation, which appears to be from the description of the class II symptoms; and as noted *supra*, the NYHA Class II category also indicates that ordinary physical activity results in fatigue, palpitation, and dyspnea.  Tr. 21 (citing Tr. 1005); *see* footnote three *supra*.   Review of the longitudinal record shows providers assessed him throughout the period at issue as Class III, Class II, and Class II-III depending on his symptoms, and Plaintiff points out this was also only one of the ways his cardiac condition was assessed.  ECF No. 16 at 9-10; *see, e.g.*, Tr. 465, 476, 744, 837, 840, 998, 1028, 1030.

In citing portions of the record that show milder examination findings while the longitudinal record shows more mixed results, the ALJ's characterization of the

ORDER - 18

record is not supported by substantial evidence.  The ALJ's conclusion Plaintiff

improved is therefore not supported by substantial evidence.

### 3. Activities of daily living

The ALJ found Plaintiff was doing more outside activities and work

including fixing a bike.  Tr. 21.  The ALJ may consider a claimant's activities that

undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a

substantial part of the day engaged in pursuits involving the performance of

exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when

the claimant reports participation in everyday activities indicating capacities that

are transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff was doing more outside activities and work

including fixing a bike, and that his daily activities included walking around his

home and performing daily chores such as washing dishes, sweeping, laundry, and

dusting.  Tr. 21.  As Plaintiff points out, however, he testified he could only

manage about an hour of seated chores, such as folding laundry, at a time before

needing a 10 to 20 minute break.  ECF No. 16 at 8; *see* Tr. 57-58.  He testified he

ORDER - 19

has to sit and lift his leg up to tie his shoe or he becomes lightheaded; and that he

becomes dizzy washing dishes, watering the lawn, or sweeping, and that he has to

sit and rest for 20 to 30 minutes until he "gets [his] wind back and make[s] sure

[he's] not dizzy." Tr. 50.  The ALJ does not specify what activities Plaintiff was

performing outside, or for how long, or in what manner he was attempting to fix a

bike; Plaintiff also points out that he seriously injured himself trying to fix a bike,

when he lacerated his ulnar artery in the summer of 2019, requiring "Life Flight"

transport to Seattle for surgery.  ECF No. 16 at 8; *see* 737, 1013, 1017.  Records

from September 2019 show he remained symptomatic with fatigue,

lightheadedness, and shortness of breath with activities; and he "was not very

active due to his symptoms and reported he was able to walk 2-3 blocks slowly."

Tr. 1010.  The ALJ's conclusion that Plaintiff's activities were inconsistent with

his symptom claims is not supported by substantial evidence.

Overall, the ALJ failed to provide clear and convincing reasons, supported

by substantial evidence, to reject Plaintiff's symptom allegations.  Upon remand

the ALJ is instructed to reevaluate Plaintiff's symptom claims and the medical

evidence of record with the assistance of medical expert testimony, preferably a

cardiologist.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of R. Summers, M.D., B. Packer, M.D., G. Hale, M.D., and D. Stevick, M.D.  ECF No. 16 at 11-19.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding"

ORDER - 21

(including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs

ORDER - 22

(c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

416.920c(b)(3).

The parties disagree over whether Ninth Circuit case law continues to be

controlling in light of the amended regulations, specifically whether the "clear and

convincing" and "specific and legitimate" standards still apply.  ECF No. 16 at 12-

13; ECF No. 17 at 8.  "It remains to be seen whether the new regulations will

meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's

reasoning and whether the Ninth Circuit will continue to require that an ALJ

provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis

of medical opinions, or some variation of those standards."  *Gary T. v. Saul*, No.

EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29,

2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3

(W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must defer

to the new regulations, even where they conflict with prior judicial precedent,

unless the prior judicial construction 'follows from the unambiguous terms of the

statute and thus leaves no room for agency discretion.'"  *Gary T.,* 2020 WL

3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet

Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d

Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld

ORDER - 23

1  unless 'they exceeded the Secretary's authority [or] are arbitrary and

2  capricious.'").

3      There is not a consensus among the district courts as to whether the "clear

4  and convincing" and "specific and legitimate" standards continue to apply. *See,*

5  *e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

6  Nov. 10, 2020) (applying the specific and legitimate standard under the new

7  regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal.

8  Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*,

9  2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new

10 regulations displace the treating physician rule and the new regulations control);

11 *Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at *4-6 (N.D.

12 Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and

13 legitimate nor clear and convincing standard).  This Court has held that an ALJ did

14 not err in applying the new regulations over Ninth Circuit precedent, because the

15 result did not contravene the Administrative Procedure Act's requirement that

16 decisions include a statement of "findings and conclusions, and the reasons or basis

17 therefor, on all the material issues of fact, law, or discretion presented on the

18 record." *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL

19 4071863, at *5 (E.D. Wash. Sept. 7, 2021).  Nevertheless, it is not clear that the

20 Court's analysis in this matter would differ in any significant respect under the

ORDER - 24

specific and legitimate standard set forth in *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

   *1. Dr. Sumners*

   In January 2018 and August 2019 Dr. Sumners completed physical functional evaluations on behalf of DSHS and rendered an opinion on Plaintiff's level of functioning.  Tr. 389-91, 868-69.

   In January 2018, Dr. Sumners indicated Plaintiff's diagnosis was congestive heart failure due to cardiomyopathy.  Tr. 390.  He opined Plaintiff was limited to sedentary work, with moderate limitation in his ability to lift, carry, handle, and pull.  Tr. 390.   He estimated these limitations would persist "6+" months with available treatment and that his condition was primarily the result of drug or alcohol use with the past 60 days.  Tr. 390.  He opined it was "too early to tell at this stage" if Plaintiff's current level of impairment was expected to persist following 60 days of sobriety, noting "probably likely to see improvement. Uncertain."  *Id.*

   In August 2019, Dr. Sumners opined Plaintiff was limited to sedentary work with marked limits in his ability to lift, carry, handle, push, pull, reach, stoop, and crouch, due to congestive heart failure and left ulnar artery injury; he estimated limitations would persist 24 months with available treatment and were not primarily the result of alcohol or drug use within the past 60 days.  Tr. 867-68.

ORDER - 25

1   The ALJ found Dr. Sumner's opinion "assessing a limitation to sedentary

2   work for six-plus month period persuasive," but found his 2019 opinion

3   unpersuasive.  Tr. 21-22.

4   The ALJ found Dr. Sumners 2018 opinion that Plaintiff was likely to see

5   improvement was supported by the record including findings at that time, along

6   with evidence of "progressive improvement in cardiac symptoms as evidence by

7   denial of symptoms and increased activity."  Tr. 21-22.  Supportability and

8   consistency are the most important factors an ALJ must consider when determining

9   how persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2),

10   416.920c(b)(2).  The more relevant objective evidence and supporting explanations

11   that support a medical opinion, the more persuasive the medical opinion is, and the

12   more consistent an opinion is with the evidence from other sources, the more

13   persuasive the opinion is.  20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

14   Here, while the ALJ notes Dr. Sumners "normal exam findings including normal

15   cardiac," he fails to discuss relevant evidence including objective evidence of low

16   ejection fraction, which was discovered upon his hospitalization and persisted

17   throughout the period at issue, as explained in relation to Plaintiff's symptom

18   complaints *supra*.  Records do not support the ALJ's findings of progressive

19   improvement in cardiac symptoms, and the ALJ's finding that Dr. Sumner's 2018

20

ORDER - 26

1  opinion was persuasive because it was temporary is not supported by substantial

2  evidence.

3         The ALJ found Dr. Sumner's 2019 opinion assessing continued sedentary

4  limitations unpersuasive because he does not include findings and states, "see

5  chart" on the form, and his opinion is unsupported by treatment records at that

6  time.  Tr. 22; *see* Tr. 866-68.  Consistency is one of the most important factors an

7  ALJ must consider when determining how persuasive a medical opinion is.  20

8  C.F.R. § 416.920c(b)(2).  The more consistent an opinion is with the evidence

9  from other sources, the more persuasive the opinion is.  20 C.F.R. §

10  416.920c(c)(2).  Additionally, an ALJ may discredit physicians' opinions that are

11  unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359

12  F.3d 1190, 1195 (9th Cir. 2004).

13         Here, Dr. Sumners uses the same DSHS forms for his 2018 and 2019

14  opinions; he did not include findings on his 2018 opinion, and he also wrote "see

15  chart" in the same place on the 2018 form, in the portion of the form requesting he

16  "list all laboratory … and other diagnostic test results."  *Compare* Tr. 389-391; Tr.

17  866-68.  As discussed *supra*, the ALJ found his 2018 opinion persuasive because it

18  was "supported by the record including findings."  The ALJ rejects Dr. Sumner's

19  2019 opinion, however, finding it is "unsupported by treatment records at that

20  time" as "treatment notes in August 2019 describe no findings and no ongoing

symptoms related to cardiac impairment." Tr. 22.  The ALJ cites to two records

from appointments with Dr. Sumners in early August 2019, one of which was a

follow up for his emergency surgery/artery repair a few weeks prior on July 19, Tr.

880-82, and the other for "DSHS paperwork." Tr. 880-82, 931.  As Plaintiff points

out, however, Dr. Sumners/Indian Health Services was copied on treatment records

from Yakima Heart Center and other providers at this time and throughout the

period at issue. *See, e.g.*, Tr.  477, 480, 745, 1002, 1006, 1012, 1031, 1036.

Yakima Heart Center, for example, copied Dr. Sumners on records from an

appointment a few weeks before his August 2019 opinion. *See* Tr. 745.  This

cardiology treatment note indicates Plaintiff's ejection fraction is still 20-25

percent with grade 2 diastolic dysfunction, that his symptoms include shortness of

breath showering and dressing, and that he "remains NYHA class II-III … despite

optimal med[ication]." *See* Tr. 743-45.  Dr. Sumner received copies of cardiology

records from late August 2019, as well, when his cardiologist determined that due

to persistent low ejection fraction and NYHA class II/III despite optimal medical

therapy, he required implantation of a cardiac defibrillator.  Tr. 1010-12.  As

explained *supra*, in relation to Plaintiff's symptom complaints, the ALJ did not

discuss these or other records, which show persistent objective cardiac findings

along with ongoing symptoms related to cardiac impairment at the time of Dr.

Sumner's August 2019 opinion.  The ALJ's finding that his opinion was

ORDER - 28

"unsupported by treatment records at that time" is not supported by substantial evidence.

Upon remand the ALJ is instructed to reconsider Dr. Sumner's opinions with the assistance of medical expert testimony, and to incorporate the limitations into the RFC or give reasons supported by substantial evidence to reject the opinions.

### 2. Other opinions

Plaintiff also challenged the ALJ's analysis of the medical opinions of Dr. Packer, Dr. Hale, and Dr. Stevick. ECF No. 16 at 11-19. Because this case is remanded to reconsider Plaintiff's symptom complaints along with Dr. Sumner's medical opinions, the Court declines to address the challenges to the other medical opinion evidence here. Upon remand the ALJ is instructed to reassess all medical opinion evidence and the longitudinal record with the assistance of medical expert testimony, and to incorporate the limitations into the RFC or give reasons supported by substantial evidence to reject the opinions.

### C. Step Three

Plaintiff contends the ALJ erred by not properly assessing Listing 4.02. ECF No. 16 at 19-21. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from

doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy*, 738 F.3d at 1176. If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*. However, "[m]edical equivalence must be based

ORDER - 30

on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

The ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, including listing 4.02.  Tr. 18.  The ALJ found that Plaintiff's persistent low ejection fractions of 20-25 percent "could meet the listing requirement of 4.02A1," but the ALJ did not find evidence of 4.02B criteria, as required to meet the listing.  *Id.*

As the case is being remanded for reconsideration of Plaintiff's symptom complaints and reconsideration of the medical opinion evidence, upon remand the

ORDER - 31

ALJ is instructed to also reconsider the step-three analysis with the assistance of medical expert testimony.

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 16 at 21.  "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

Here, the Court finds further proceedings are necessary to resolve conflicts in the record, including conflicting medical opinions, as well as to further develop the record by taking testimony from a medical expert. As such, the case is remanded for further proceedings consistent with this Order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

ORDER - 33

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED March 25, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 34